OPINION
{¶ 1} Appellant Amy McDonald appeals from the decision of the Delaware County Juvenile Court granting permanent custody of her two children to Appellee Delaware County Department of Job and Family Services ("DCDJFS"). This appeal is expedited, and is being considered pursuant to App.R. 11.2(C). The relevant facts are as follows.
 {¶ 2} Appellant is the mother of Dakota, born in 1996, and Harley, born in 1999. On July 31, 2001, appellant began serving a fourteen and one-half year prison sentence in the Ohio Department of Rehabilitation and Corrections, following her conviction on numerous counts of check forgery. The two children thereafter remained in the custody of their father, Michael Charles McDonald. However, on July 12, 2002, Michael was killed in a motorcycle accident. On August 13, 2002, Appellee DCDJFS filed a complaint alleging Dakota and Harley to be dependent children.
 {¶ 3} A hearing was held on October 15, 2002. Via a judgment entry filed October 31, 2002, the trial court found the children to be dependent and temporarily committed the children to DCDJFS for out-of-home placement. The court also denied appellant any further visitation and stated a permanent custody motion was imminent. Appellant filed an appeal from said judgment entry. See In re McDonald, Delaware App. No. 02CAF11051, 2003-Ohio-543 ("McDonald I").However, this court affirmed the judgment of the trial court on January 30, 2003.
 {¶ 4} In the meantime, on October 16, 2002, DCDJFS filed a motion seeking permanent custody of Dakota and Harley. The court conducted an evidentiary hearing on the motion on February 24, 2003. On February 26, 2003, the court rendered a judgment entry granting permanent custody of both children to DCDJFS.
 {¶ 5} On March 24, 2003, appellant filed a notice of appeal, and herein raises the following two Assignments of Error:
 {¶ 6} "I. THE TRIAL COURT ERRED IN AWARDING PERMANENT CUSTODY OF APPELLANT'S MINOR CHILDREN TO THE DELAWARE COUNTY DEPARTMENT OF JOBS AND FAMILY SERVICES IN THAT THE STATE FAILED TO SHOW BY CLEAR AND CONVINCING EVIDENCE THAT IT WAS IN THE BEST INTEREST OF THE CHILDREN TO GRANT PERMANENT CUSTODY TO THE DEPARTMENT.
 {¶ 7} "II. THE TRIAL COURT ERRED IN FINDING THAT THE DELAWARE COUNTY DEPARTMENT OF JOBS AND FAMILY SERVICES MADE REASONABLE EFFORTS TO ELIMINATE THE CONTINUED REMOVAL OF THE CHILDREN AND TO REUNITE THE CHILDREN WITH THEIR PARENT AS REQUIRED BY SECTION 2151.419(A)(1) ORC."
 I. {¶ 8} In her First Assignment of Error, appellant argues the trial court erred in finding that a grant of permanent custody of Dakota and Harley to DCDJFS was in the children's best interest. We disagree.
 {¶ 9} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (Feb. 10, 1982), Stark App. No. CA-5758. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Construction (1978), 54 Ohio St.2d 279,281.
 {¶ 10} The relevant statutory provisions are as follows:
 {¶ 11} In determining the best interest of a child, the trial court is required to consider the factors contained in R.C. 2151.414(D). These factors are as follows:
 {¶ 12} "(1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster care givers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 13} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 14} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 15} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 16} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 17} In the case sub judice, at the February 24, 2003 hearing, DCDJFS first called Marcy Downing, the intake caseworker assigned to the case. She officially monitored the case from August 12, 2002 to August 26, 2002. Downing made two observations of visiting between the children and appellant at the Women's Reformatory in Marysville. The visits went well; Downing recalled that during the visits the children interacted with their mother and did not appear distraught in her presence.[1]
Tr. at 14. However, she equally noted the children were talkative while being transported away from the prison afterward and showed no signs of distress as they were being separated from appellant. Tr. at 15. Downing expressed her view that permanent custody would be necessary in this case to facilitate DCDJFS being able to find a home for possible adoption of Dakota and Harley. Tr. at 12.
 {¶ 18} DCDJFS next called Lisa Cabot, the ongoing caseworker. Cabot testified she had nine and one-half years of experience in the field of child protective services. She expressed "no concerns whatsoever" about Dakota and Harley's current foster family, and that the two girls were "very happy" there. Tr. at 25. Both girls had received grief counseling in "Kids Can Cope," as well as current individual counseling. Cabot explained that two relative placements were attempted, but these could not be maintained permanently. Cabot also explored the possibility of placement with an uncle, who, despite previously keeping the girls after their father died, had indicated he could not assume permanent responsibility. Appellant asked Cabot to look into a placement with one of appellant's friends, Margie Felstead; however, after a home study in Franklin County turned up prior "involvement" on abuse and neglect allegations, that possibility was rejected in favor of the foster-to-adopt family. Tr. at 24. Cabot also recalled: "I believe that at one of the visitations I had asked Miss (sic) McDonald if there was anybody else in her family that would be a possibility, she had told me no at that time, said that there was no other relatives that we were aware of that could commit to the girls long term." Tr. at 23-24.
 {¶ 19} The record also reveals that the guardian ad litem's report further encouraged a granting of permanent custody. Although appellant indicated in her testimony she would try to maintain contact with Dakota and Harley from prison should permanent custody not be granted, and further named more relatives with whom the children would lose contact upon termination of parental rights,[2] we must conduct our review mindful that "the discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." In re Awkal (1994), 95 Ohio App.3d 309, 316. We therefore conclude that the statutory "best interest" factors were duly considered and that the trial court's determination regarding best interests was supported by competent, credible testimony.
 {¶ 20} Appellant's First Assignment of Error is overruled.
 II. {¶ 21} In her Second Assignment of Error, appellant contends the trial court erred in finding that DCDJFS made reasonable efforts to reunite the children with appellant. We disagree.
 {¶ 22} Pursuant to R.C. 2151.419, a trial court is required to determine whether the pertinent children's services agency has made reasonable efforts to return the child to either of the parents before it authorizes the continued removal of the child. This functions as "a statutory check on whether the agency performs its duty to provide services to the parents." In re T.K., Wayne App. No. 03CA0006,2003-Ohio-2634, citing In re Stevens (July 16, 1993), 2nd Dist. No. 13523. However, " *** even where the agency does have a duty to use reasonable efforts, courts have found an implied exception to mandatory case planning efforts where the efforts would be futile." Id., citing Inre Jackson (Aug. 13, 1999), 2nd Dist. No. 17514; In re Smallwood (Jan. 26, 1998), 12th Dist. No. CA97-02-041; In re Crosten (Mar. 21, 1996), 4th Dist. No. 95CA1692. In the case sub judice, a case plan was prepared; however, Cabot opined that " *** there aren't any services that we could provide to her while she's incarcerated that I'm aware of." Tr. at 30.
 {¶ 23} Of particular note in this case is appellant's plan for a clemency hearing on her criminal sentence. She expressed confidence that this would decrease her fourteen and one-half year sentence, perhaps to as little as one year. Certainly, the Ohio Constitution gives the Governor the power to grant clemency upon such conditions as he thinks proper. Ohio Const., Art. III, § 11. However, as we concluded inMcDonald I, "[i]It appears from the evidence presented that clemency is a long shot." We thus concur with the trial court's conclusion, pursuant to R.C. 2151.414(E)(12), that "[t]he clemency hearing decision does not have a result sufficiently certain to overcome the status of incarceration for a period of over 18 months from October 16, 2002." Judgment Entry at 3.
 {¶ 24} Therefore, under the circumstances of this case, we find the record provides competent credible evidence that DCDJFS engaged in reasonable case planning (see In re Baby Boy Eddy [Nov. 12, 1999], Fairfield App. No. 99 CA 17) and made reasonable efforts to reunify. Accordingly, appellant's Second Assignment of Error is overruled.
 {¶ 25} For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Juvenile Division, Delaware County, Ohio, is hereby affirmed.
By: Wise, J., Gwin, P.J., and Farmer, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas, Juvenile Division, of Delaware County, Ohio, is affirmed.
Costs to appellant.
[1] We note at this juncture the contrast with the following fromMcDonald I: "The temporary foster father told the trial court after visiting appellant in jail, the children return traumatized and `never ask for their mother.' "
[2] Appellant nonetheless made no indication that these relatives were in a position to seek custody of the girls.